Ruffin, C. J.
 

 The question, on which the merits of this case depend, has been fully settled by previous decisions of this Court. The judgment of the court of law was perfectly correct, that none of the money in the Sheriff’s hands was applicable to the debt in the name of the Rix Hospital; for the question there was between the plaintiffs in the several executions, and, as this execution had been withdrawn before the sale, the Sheriff could not apply any of the money to it, but was bound to apply it to the executions under which he made the sale. But, still, the question remained, what effect the conduct of the creditor, in withdrawing the execution under the circumstances then existing, ought to have on his right in equity to raise the debt out of the surety. We think it clear, that, as far as he would have got satisfaction out of the property of the principal debtor, if he had let the execution have its course on the levy, to that extent the surety is discharged. The cases of
 
 Cooper and Arrington
 
 v.
 
 Wilcox, 2
 
 Dev. & Bat. Eq. 90, and
 
 Nelson
 
 v.
 
 Williams,
 
 Ibid. 118, are directly in point. The principle is, that, whenever a collateral security on the property of the principal is given or obtained, it amounts to a specific appropriation of those effects to the debt ; and, therefore, the surety is entitled to the benefit of it as well’ as the creditor, and the creditor is under a duty to the surety not wilfully to impair the security or omit to enforce satisfaction on it. It was urged on us at the bar, that there was a distinction between the case of
 
 Nelson
 
 v.
 
 Williams,
 
 and the present in this; that in the former, the security on the property of the principal by the
 
 fieri facias
 
 was, at the instance of the surety, and by an agreement between him and the credit- or, and was expressly for the purpose of obtaining an indemnity to the surety. It might be replied, if necessary, that in
 
 *397
 
 point of fact,- this is substantially the same ease. Rut it is not necessary to compare the cases in that respect; for the truth is, that the circumstances alluded to, though noticed in the opinion of the Court, because existing in that case, had no influence upon the decision. Care was taken to let that be seen by saying, that “the surety is entitled to
 
 every
 
 collateral security which the
 
 creditor
 
 gets into his hands, and that, as soon as it is created,- and
 
 by whatever means
 
 the surety’s interest in it attaches, and the creditor cannot impair it.” Several instances of the application of the principle, are then noticed,in which the supposed securities were not obtained at the instance of the surety. The wrong done to the surety by the creditor, is not defeating an effort by the surety to obtain an indemnity •, but it consists in this, that the creditor has a security for his debt on the principal debtor’s own property, and has destroyed or departed with the same to the prejudice of the surety. Therefore,- it was said in
 
 Nelson
 
 v.
 
 Williams,
 
 that it was immaterial by what means the security was created, and,- in so saying, the Court adopted the language of Loam Eldon. In
 
 Mayhem
 
 v.
 
 Crickett 2
 
 Swans. 191, he said “the circumstance, that the plaintiffs (the sureties) did not know that the defendants (the creditors) held a warrant of Attorney, was of no consequence ; because sureties are entitled to the benefit of every security which the creditor had against the principal debtor; and whether the surety knows of the existence, of those securities or not is immaterial.” Upon that ground, he held in that case,- that where the creditor had taken a separate
 
 judgment
 
 against the principal debtor, and took his goods in execution, and then withdrew the execution — all, without the knowledge of the surety — it was a discharge of the surety. In the present case, the sureties knew of the security created by the levy on the principal’s effects, and it was the only means of saving themselves from loss, and they urged the creditor to proceed on it; but he withdrew the execution for the express purpose of throwing the loss of this debt upon the sureties, because, thereby, he hoped to save another debt
 
 *398
 
 of his own, the execution for which was posterior to that of Hospital.
 

 It was said at the bar, that the Sheriff might have arranged ^ executions so as to raise the largest possible amount of the execution debts, by satisfying the Superior Court executions out of the property of Busbee and Smith, and applying White’s property and Busbee’s negroes, that were not conveyed, to the County Court executions; and that, if the Sheriff had done so, those sureties could have had no redress against him.— And it was thence inferred, that the defendant is not to blame for bringing about a state of things, for which the Sheriff, if effected by him, would not have been responsible. But the consequence does not follow. The Sheriff proceeds in obedience to his writs, and therefore their mandates justify him, and he is not bound to enter into any equities between any of the parties. But, if the creditor attempts to have a use made of the writ, which, however legal, is inequitable, a Court of equity will reslrain him. Therefore, the legal irresponsibility of the Sheriff, for discharging the property of the principal debt- or and seizing that of the surety,
 
 Eason
 
 v. Petway, 1 Dev. & Bat. 44, does not establish the liberty of the creditor to bring about the same state of things. It may be true, also, that the Sheriff and the creditor might arrange the executions, or, if the expression may be allowed, marshall the debtor’s property, so as to raise the largest sum for the creditors. But that can only be allowed in equity, if at all( in respect of a defendant, who is liable for all the debts, and whose property is in such a state, that only a portion of it can be reached by one of the executions, while another execution may cover the whole. Such, for example, may be the case of Busbee ; against whom all of the judgments both in the Superior Court and County Court, were rendered. To him, therefore, it was immaterial, as White’s property was insufficient to pay them all, whether this or that one had the benefit of that property. For that reason it may also be, that the creditor might properly obtain satisfaction of the itix Hospital execution out of the property conveyed by Busbee in the deed of trust. But, with
 
 *399
 
 those questions we now have no concern. They arise between persons not before us. Smith was liable only for the judgments in the Superior Court and was not a party to those in the County Court. The only question which arises upon this appeal from an interlocutory decree is, whether the injunction should be continued for any and what part of the debt, so as to restrain the creditor from raising it from the present plaintiff. Now, as between Smith and the creditor, the latter is bound, as we have seen, not to have given up the securities he had for the debt. Even if he could, as against Busbee, levy the whole of the debt out of his property, yet he could not rightiully do so in respect to Smith’s responsibility; because as soon as Busbee’s property had paid the debt, an action would arise to him against Smith for contribution, whereas White’s property, as far as it went, would, if applied, have been an absolute discharge to all concerned. When, therefore, the execution was levied upon White’s property and also upon Busbee’s negroes, and was the preferable lien upon both of those funds, McLeod ought not to have discharged those properties therefrom, and caused them to be applied otherwise. It is clear, therefore, that the injunction should have been continued, at least, partially. And as far as we can conjecture, it might properly have been dissolved for, probably, tinee or four hundred dollars, or even a little more. But in the present state of our information, we are unable to see the precise sum, for which the injunction should have been continued, or for which it should have been dissolved. In the first place, it is admitted, that White’s property brought $2,372 50, and that the executions of Johns and Atkins, said to be about $1,-300, exclusive of interest and costs, were satisfied thereout. With that application of the fund, the plaintiff, Smith, has no cause of complaint, inasmuch as he, like Busbee, was bound for both of those debts as well as that to the Rix Hospital. ■
 

 It was therefore immaterial to White and his sureties, whether the deficit exist as a balance due on one of the exeT cations or as balances on all of them. After satisfying Johns and Atkins, there would be a residue of ten or twelve bund
 
 *400
 
 dollars of the proceeds of White’s property applicable to Rix Hospital’s judgment; which would, probably,
 
 leave
 
 $700 or $800 thereof, to be paid by Busbee and Smith. Busskare thereof, was raised out of the sale of his negroes. We speak of it as having been raised, because, although, as between the creditor and Busbee, the former
 
 may
 
 still be at liberty to proceed upon the levy on this execution on the other property of Busbee, yet, for the purpose of exonerating Smith in this Court from liability for Busbee’s half of White’s deficit, the money is to be considered as having been raised, inasmuch as (he sales of Busbee’s property, on which the execution was levied, and which was applicable to it in the first place, exceeded Busbee’s share of the deficit, and has been received by McLeod. Therefore, the injunction should have been dissolved only for the amount of Smith’s share of the deficit — supposed to be, as before mentioned, three or four hundred dollars. Probably, that could soon have been estimated by the master, from the executions and Sheriff’s returns, shewing the debts, interest and costs. And if either of the parties had so moved, it would have been the correct course to have ordered that estimate, and required the plaintiff to pay into Court his half of the balance found, and on those terms only continued the injunction. But, as the Court could not ascertain the balance from the pleadings, and there was no computation asked for, but the defendant moved peremptorily for a dissolution generally of the injunction, we do not see what course the Court could have pursued, other than that, which was adopted, of continuing the injunction to the hearing ; at which time only can the Court refer a cause to the master, properly speaking, for an account.
 

 The court holds that the delay in filing the bill, for more than four months, is not a ground for dissolving the injunction in this case. Perhaps it may he the proper construction of the act of 1800, that it embraces only those cases in which the bill is founded on an equity existing at the time the judgment at law was obtained — which seems to be the obvious purview of the act. But whether that be so or not, we are of
 
 *401
 
 opinion, that when the defendant answers, and the plaintiff’s equity is apparent upon the answer itself, the injunction should not be dissolved, although it may have been at first improvidently granted. The legislature did not mean, that no relief should be given in the court of equity against a judgment at law more than four months old. The act has never been regarded as a statute of limitation, constituting a peremptory bar to a bill, or to granting an injunction. It is directory to the Judges out of court not to grant injunctions on the bill, and the usual affidavit of the plaintiff to its truth; and it was not meant to alter the jurisdiction in court. By the original course of the court of equity, an injunction was not ordinarily granted before answer or a default in not answering. But as our courts sit but twice in the year, and only for short periods, it became necessary to authorise a Judge to grant the writ
 
 ex parte
 
 in vacation. Then the restriction of the act of 1800 was provided as a proper guard against the abuses, that might grow up from those preliminary injunctions. But when the time comes for a defendant to answer, and he fails to do so, or he comes in with his answer, and upon its face an equity for the plaintiff is seen, the old jurisdiction of the Judge in court exists to award an injunction, as ancillary to the relief, to which the plaintiff will unquestionably be entitled in the progress of the cause. Therefore, if, in such a case, an injunction had been granted by a Judge in vacation, however improvident! y, it would be idle to dissolve it; because in thé next breath the court would be obliged to award one on the answer to the same effect. That the act has not been regarded as creating a bar, upon the very short period mentioned in it, is seen from the case of
 
 Pugh
 
 v. Maer, 4 Hawks. 362; in which it was held, that where the defendant is fully secured, by the payment of the money into court, the purpose of the act is fulfilled, and the injunction may properly be awarded on the bill in vacation, after the time prescribed in the act.
 

 Per Curiam, Ordered to be certified accordingly.